

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LEE F. KENNEDY            PLAINTIFF

vs.            CAUSE NO. 2:15cv 135KS-MTP

JEFFREY L. HALL and            DEFENDANTS
BRYAN NELSON, PA

## COMPLAINT

COMES NOW Plaintiff, Lee F. Kennedy, by and through her undersigned counsel, and files this Complaint against Jeffrey L. Hall and Bryan Nelson, PA (collectively, "Defendants") and, in support thereof, would show unto the Court as follows:

1. Lee F. Kennedy, a/k/a Lee K. McPherson ("Kennedy") is an adult citizen and resident of Austin, Texas.

2. Defendant Jeffrey L. Hall ("Hall") is an adult resident citizen of the State of Mississippi and may be served with process of this Court in accordance with Federal Rules of Civil Procedure.

3. Defendant Bryan Nelson, PA ("Bryan Nelson") is a corporation organized and existing pursuant to the laws of the State of Mississippi, having its principal place of business in Hattiesburg, Mississippi.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. There exists complete diversity of citizenship between Kennedy, on the one hand, and Defendants, Bryan Nelson and Hall, on the other. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over both Defendants. This is a legal malpractice claim. The actions and/or omissions that form the basis of this Complaint occurred in the United States District Court for the Southern District of Mississippi, Southern Division.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2). As set forth below, a substantial part of the events or omissions giving rise to the claims occurred in this district.

7. Hall, while in the employ of the law firm Bryan Nelson, was retained to represent Kennedy in the matter styled *HCB Financial Corp. v. Kennedy, et al.*, U.S. District Court, Southern District of Mississippi, Civil Docket No. 1:10-cv-00559-HSO-JCG (hereinafter the "HCB Litigation").

## THE HCB LITIGATION

8. The HCB Litigation was originally filed on December 9, 2010.[1] Kennedy was named a defendant in the Amended Complaint filed in that proceeding on April 14, 2011.[2]

9. Defendant Hall and the law firm of Bryan Nelson were retained to provide legal representation to Kennedy in the HCB Litigation.

## FACTUAL BACKGROUND

10. In 2005, Kennedy (along with co-defendants in the HCB Litigation Robert T. Windham ("Windham"), David Fleisher ("Fleisher") and William Michael Adkinson ("Adkinson")) formed a joint venture for the purpose of developing property to provide housing

---

[1] Exhibit "1", Complaint in *HCB Financial Corp. v. Kennedy, et al.*, U.S. District Court, Southern District of Mississippi, Civil Docket No. 1:10-cv-00559-HSO-JCG
[2] Exhibit "2", Amended Complaint in *HCB Financial Corp. v. Kennedy, et al.*, U.S. District Court, Southern District of Mississippi, Civil Docket No. 1:10-cv-00559-HSO-JCG

for those people displaced as a result of Hurricane Katrina. As a result of this venture, Kennedy, Windham, Fleisher and Adkinson formed Mississippi Investors VI, L.L.C. ("MI").

11. In September of 2006, MI purchased approximately 2269+/- acres of real property located in Stone County, Mississippi ("2269 Acres") with seller financing from Double A Firewood ("Firewood") for a purchase price of approximately $7,438,400.00 (the "Firewood Loan"). Kennedy, together with Windham, Fleisher and Adkinson, executed personal guaranties for owner financing.

12. The personal guarantee of Kennedy on the Firewood Loan was the primary legal instrument at issue in the HCB Litigation vis-à-vis Kennedy. HCB sued Kennedy on this guarantee and ultimately obtained a judgment against her. Bryan Nelson and Hall defended Kennedy in that matter.

13. The 2269 Acres eventually became the site of the Horizon master-planned community ("Horizon Property"). MI obtained approval for over 5,100 single family homes, tens of thousands of multi-family units, as well as commercial and retail space, commuter rails, parks, lakes, educational and other facilities.

14. On August 23, 2006, MI signed a promissory note in the original principal sum of $10,000,000 from CPB ("CPB Note 1").[3] This promissory note, CPB Note 1, was secured by a second lien Deed of Trust on the "Horizon Property". CPB did not have a first lien because that position was held by Firewood as security for the Firewood Loan.

15. As a condition to CPB Note 1, CPB demanded additional collateral. MI, CPB and Long Point Cove, L.L.C. ("Long Point") agreed that approximately 16 acres of property located

---

[3] *See* CPB Note 1, Exhibit "5".

in Bay County, Florida, owned by Long Point, could be used as additional collateral (the "Long Point Cove Property"). The Long Point Cove Property had an existing first lien on it in favor of Beach Community Bank. In order to secure a first lien on the Long Point Cove Property in favor of CPB, a portion of the proceeds of the $10,000,000 loan was advanced to "payoff Beach Community Bank". The Long Point Cove Property was additional security for the CPB Note 1.

16. In December of 2006, Kennedy sold her interest in MI to Adkinson with the full knowledge of CPB.[4] After this date Kennedy had no interest in MI.

17. Two years later, in November of 2008, MI entered into a revolving line of credit loan agreement with CPB in the amount of $7,837,477.29 in order to, among other things, bring the CPB Note 1 current.[5] MI borrowed this money from CPB almost two years after Kennedy divested herself of any interest in MI. The loan commitment states how the proceeds were to be applied, as follows:

> 2. Use of Proceeds
>
> The Proceeds of the loan shall be used to pay off mortgage debt listed below and provide funding for infrastructure improvements, interest reserved and Working Capital for the development of residential lots in the Horizon Subdivision Sections D & E. Use of proceeds as follows:
>
> | | |
> |---|---|
> | $1,556,000 | Pay Off Double A Firewood |
> | **$1,850,000** | **Payoff existing debt Miss Inv VI, LLC #2252139 [CPB Loan 1]** |
> | $600,000 | Working Capital |
> | $400,000 | Interest Reserve A & D loan |
> | $539,000 | Interest Reserve Miss Inv. #2252139 |

---

[4] Membership Transfer and Surrender Agreement, Exhibit "3". *See also* Exhibits "1" and "2".
[5] *See* Exhibit "4" - Loan Commitment

>  $126,000      Interest Reserve Summit Leasing #182141
>
>  $2,000,000    Available for infrastructure[6]

18. The loan commitment was closed on February 4, 2009 and two promissory notes were signed by MI, one in the original amount of $5,837,477 ("CPB Note 2")[7], and the other in the amount of $2,000,000 ("CPB Note 3")[8]. These notes were executed by MI after Kennedy sold her interest to Adkinson.[9]

19. Kennedy did not sign a guaranty for CPB Note 2 or CPB Note 3.

20. CPB Note 2 provides for multiple loan advances.[10] CPB Note 2 is interest only, with interest payments commencing March 4, 2009 until the note matured on February 4, 2011.[11] An interest reserve was established for CPB Note 2 in the amount of $400,000.[12] If applied to monthly interest payments as agreed, MI was current in its obligations under this note until March 2010.[13]

21. CPB Note 3 is a revolving line of credit and advances are made upon requests by the borrower.[14] CPB Note 3 was interest only, with interest payments commencing March 4, 2009 until it matured on February 4, 2011.[15] MI was current in its interest only obligations under CPB Note 3 until February 2010.[16] Both CPB Note 2 and CPB Note 3 were secured by property in

---

[6] *Id.*, emphasis supplied.
[7] *See* CPB Note 2, Exhibit "6".
[8] *See* CPB Note 3, Exhibit "7".
[9] *See* Exhibit "3".
[10] *See* CPB Note 2, Exhibit "6".
[11] *Id.*
[12] *Id.*
[13] Affidavit of Adkinson, attached as Exhibit "8" hereto and Affidavit of Windham, attached as Exhibit "9".
[14] *See* CPB Note 3, Exhibit "7".
[15] *Id.*
[16] *See* Exhibits "8" and "9".

5

Mississippi referred to as tracts D & E of Horizon Master Planned Community ("Horizon D & E") and by property in Walton County, Florida ("Walton Property").[17]

22. Pursuant to the terms of the CPB Note 2 and CPB Note 3 loan agreements, as of their funding in February 2009, MI was current on its obligations on all promissory notes with CPB and an interest reserve was established to pay monthly interest on CPB Note 1, CPB Note 2 and CPB Note 3 according to the terms of these notes until at least March 2010.[18]

23. After MI made numerous requests to fund the $600,000 in "working capital" from the CPB Note 2, CPB answered by refusing to fund the "working capital" and instead told MI that CPB had set it aside as a two-year interest reserve on the Firewood Note.[19] As a result thereof, Firewood began making demand for payment on the Firewood Note.

24. MI approached CPB and proposed to borrow $6,200,000 in order to (a) purchase the Firewood Note; (b) prevent CPB's second Deed of Trust from being wiped out in foreclosure; (c) give CPB a first Deed of Trust on villages D & E in Horizon; (d) create an additional interest reserve on the village D & E loans; (e) prevent CPB's Horizon loans from being classified by the bank regulators; and (f) provide MI with working capital to commence its building program.[20]

25. After CPB agreed to the arrangement, MI made several requests for the loan documents on the $6,200,000 loan without any response.[21]

---

[17] *See* CPB Note 2, Exhibit "6" and CPB Note 3 Exhibit "7".
[18] *See* Exhibits "8" and "9".
[19] *See* Exhibits "8" and "9".
[20] *See* Exhibits "8" and "9".
[21] *See* Exhibits "8" and "9".

26. Just prior to the scheduled foreclosure of the Horizon Property, it was discovered that CPB had breached its agreement to fund the $6,200,000 loan and, instead, had itself purchased the Firewood Note at a discounted price.[22]

27. In 2010, CPB seized and sold the Horizon Property, Horizon D & E, and the Walton Property.[23] **CPB then purchased**, through public and private sales:

    1)    the Horizon Property for $4.59 million;

    2)    the Horizon D & E property for $721,000; and

    3)    the Walton Property for $2,400.[24]

28. The respective appraisals of the various mortgaged properties are below, as well as the purchase price paid by CPB for those properties purchased by it.

| Property | Appraisal Amount | Appraisal Date | Purchase Price |
| --- | --- | --- | --- |
| Long Point Grove | $6,595,000<br>$22,900,000<br>$22,831,000<br>$25,300,000<br>$16,150,000 | February 1, 2011[25]<br>March 18, 2010[26]<br>August 5, 2008[27]<br>July 19, 2006[28]<br>May 12, 2006[29] | |
| Horizon Property | $23,100,000<br>$24,500,000 | June 4, 2008[30]<br>March 11, 2007[31] | $4,590,000[32] |

---

[22] *See* Exhibits "8" and "9".
[23] *See* Exhibits "10", "11", "12", "13", "14" and "15"
[24] *See* Exhibits "10", "11", "12", "13", "14" and "15"
[25] Exhibit "16"
[26] Exhibit "17"
[27] Exhibit "18"
[28] Exhibit "19"
[29] Exhibit "20"
[30] Exhibit "21"
[31] Exhibit "22"
[32] *See* Exhibit "11"

| Horizon D & E | $1,030,000<br>$3,500,000<br>$2,500,000 | September 9, 2010[33]<br>December 10, 2008[34]<br>December 10, 2008[35] | $721,000[36] |
|---|---|---|---|
| Walton Property | $675,000 | April 27, 2011[37] | $2,400[38] |

29. The total high appraisal for the collateral is $53,975,000 and the low is $31,400,000.

30. The principal amount of CPB Note 1 (the only note for which Kennedy executed a guaranty) was $10,000,000 which was later reduced to $9,747,108.54.[39] CPB Note 2 was intended to pay off the existing debt of CPB Note 1.[40]

31. Under Mississippi and Florida law the debtor (Kennedy) must be given credit for fair market value of the collateral sold prior to the lending institution pursuing a deficiency judgment.[41] Kennedy was entitled to a credit against the amount owed for the fair market value of the property sold.

32. A creditor has no right to a deficiency judgment until he satisfies the court that it would be equitable, in light of the sale price, to authorize a deficiency judgment.[42] Something more than a difference between the price paid at the foreclosure and the amount of the indebtedness

---

[33] Exhibit "23"
[34] Exhibit "24"
[35] Exhibit "25"
[36] *See* Exhibit "13"
[37] *See* Exhibit "26"
[38] *See* Exhibit "15"
[39] *See* CPB Note 1 at Exhibit "5" and Change of Terms Agreement, Exhibit "27".
[40] Loan Commitment, Exhibit "4".
[41] *Allied Steel Corp. v. Cooper*, 607 So.2d 113, 118-19 (Miss. 1992) and F.S.A.§ 679.626.
[42] *Hartman v. McInnis, Jr.*, 996 So.2d 704, 711 (Miss. 2007), citing *Wansley v. First Nat'l Bank*, 566 So.2d 1218, 1225 (Miss. 1990); *Federal Land Bank v. Wolfe*, 560 So.2d 137, 141 (Miss. 1989); *Lake Hillsdale Estates, Inc. v. Galloway*, 473 So.2d 461, 466 (Miss. 1985).

must be demonstrated before the mortgagee is entitled to a deficiency judgment.[43] Where the foreclosing creditor buys at foreclosure, it must give the debtor fair market value of the collateral.[44]

33. To determine the adequacy of the purchase price in satisfying the debt, the mortgagee must establish the fair market value of the property.[45] "Fair market value" is defined as the amount at which property would change hands between a willing buyer and a willing seller, neither under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.[46] The determination of the fair market value is a question of fact.[47]

34. CPB sold two properties in Mississippi that were securing MI's debts. One of those properties, Horizon D & E, had been appraised at values ranging from $1,030,000 to $3,500,000.[48] CPB then sold the property to itself for $721,000. CPB provided an appraisal of Horizon D & E which values the property at $1,030,000 as of September 9, 2010.[49]

35. The second Mississippi property, Horizon Property, secured CPB Note 1 and was sold to CPB by CPB for $4,590,000 in April of 2010. The last appraisal of that property valued it at $23,100,000. That appraisal was in the file of CPB.

36. CPB acquired and sold to itself the Walton Property located in Florida on March 10, 2011 for a purchase price of $2,400.

---

[43] *Hartman*, 996 So.2d at 711, citing *Wansley*, 566 So.2d at 1224.
[44] *Id.*
[45] *Allied Steel Corp. v. Cooper*, 607 So.2d 113, 118-19 (Miss. 1992).
[46] *Hartman v. McInnis, Jr.*, 996 So.2d 704, 711 (Miss. 2007).
[47] *Hartman*, 996 So.2d at 711.
[48] *See* Exhibits "23", "24" and "25".
[49] *See* Exhibit "23"

## CPB'S RECEIVERSHIP AND ACQUISTION OF CERTAIN ASSETS BY HCB

37. By Order of the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana, dated November 18, 2011, CPB was closed and the Federal Deposit Insurance Corporation was confirmed as receiver.[50]

38. First NBC Bank entered into a Purchase and Assumption Agreement with the Federal Deposit Insurance Corporation for the assets of CPB.[51]

39. On May 4, 2012, First NBC Bank assigned the Firewood Note and Kennedy Guaranty via Bill of Sale and Assignment to HCB.[52]

40. HCB assumed the position of CPB in the various transactions via the Bill of Sale.

41. By Order of this Court dated May 21, 2012 HCB Financial Corp. was substituted for CPB as a party in the HCB Litigation.[53] The HCB Litigation was a collection action against Kennedy for the amount owed on CBP Note 1. HCB provided Kennedy a credit on the amount owed based on the foreclosure proceeds received by HCB. Kennedy should have been given a credit for the fair market value of the assets/security sold rather than the amounted received at sale.

## LEGAL MALPRACTICE

42. Hall and Bryan Nelson represented Kennedy in the HCB Litigation. Bryan Nelson was the employer of Hall and as such liable for all actions or inactions of Hall during the time period at issue in this litigation.

43. Upon information and belief, Hall was a member/shareholder/partner and/or employee of Bryan Nelson at all material time periods discussed herein.

---

[50] Exhibit "28"
[51] Exhibit "29"
[52] Exhibit "30"
[53] Exhibit "31"

44. On March 14, 2013 this Court entered a Memorandum Opinion and Order Granting Plaintiff's Motion for Summary Judgment against Kennedy in the HCB Litigation.[54] An Amended Final Judgment was entered on July 11, 2013 in favor of HCB and against Kennedy in the sum of $2,019,495.82.[55]

45. The Honorable Halil Suleyman Ozerden, United States District Judge for the Southern District of Mississippi, ("Judge Ozerden") issued a Memorandum Opinion and Order Granting Plaintiff's Motion for Summary Judgment (the "written reasons for judgment"). Judge Ozerden wrote the following synopsis of the events leading up to the granting of HCB's Motion for Summary Judgment.

> Pursuant to the Amended Case Management Order entered in this case, discovery was due by October 1, 2012. Kennedy's Notice of Service of Interrogatories and Notice of Service for Requests for Production, while dated October 5, 2012, were filed on October 2, 2012. Kennedy's Notice of Service of Requests for Admission was filed October 8, 2012 and an Amended Notice was filed on October 9, 2012.
>
> - - - - - - - -
>
> **The record reveals that Kennedy did not conduct discovery within the prescribed time period and never requested an extension of the deadline.** Notwithstanding the fact that Kennedy propounded her discovery requests outside the prescribed time frame, HCB served responses on October 30, 2012. HCB filed the instant Motion for Summary Judgment on October 10, 2012, and Kennedy's Response was in fact due prior to the date she received HCB's discovery responses. However, Kennedy neither filed a motion for extension or time to file her Response to the Motion for Summary Judgment, citing as grounds any outstanding discovery, nor did she request or receive leave of Court to supplement her Response after receiving HCB's discovery responses.
>
> - - - - - -
>
> **Kennedy has had ample time to conduct discovery. Kennedy has not made a sufficient showing of what discovery she needs or how any such discovery would be utilized. Finally, Kennedy is now in possession of HCB's discovery**

---

[54] Exhibit "32"
[55] Exhibit "33"

11

**responses, but she has not filed any form of supplementation regarding her Rule 56(d) request for argument.** The Court finds that, based upon what has been submitted in connection with this request, reopening discovery at this point would unfairly prejudice HCB and is otherwise not justified under Rule 56(d). Kennedy's Rule 56(d) request that the Court allow additional discovery is denied.[56]

46. Hall failed to serve discovery in a timely manner, failed to seek an extension of the discovery cut-off date and failed to amend or supplement his opposition to HCB's summary judgment. CPB's file materials (which later became HCB's materials) contained the appraisals set forth in paragraph 28, *supra*. Hall failed to obtain and/or utilize those appraisals in sufficient time to defeat HCB's Motion for Summary Judgment. The appraisals would have established the fair market value of the collateral sold. HCB would have been forced to give credit to Kennedy for the fair market value of all collateral prior to pursuing a deficiency judgment. Hall knew that the appraisals existed and advised Kennedy that he was obtaining his own appraisals.

47. At all material times herein Hall was in possession of a Judgment rendered in the Circuit Court of Stone County, Mississippi, captioned Southern Agcredit, FLCA, f/k/a Land Bank South, FLCA vs. David E. Fleisher, Cause No. A6601-2009-0027, dated August 30, 2010 (the "Agcredit Judgment").[57] The Agcredit Judgment discussed extensively 1) the value of real estate adjacent to the parcel foreclosed upon by HCB, 2) the fair market value credit provided to debtors in foreclosure proceedings and 3) the appraisal process. The Agcredit Judgment was against one of Kennedy's partners in MI and in fact concerned MI's sister entities, Mississippi Investors VII,

---

[56] Exhibit "32" – Memorandum Opinion and Order Granting Plaintiff's Motion for Summary Judgment, pgs. 6 & 7 (Emphasis Added.)
[57] Exhibit "34" – Agcredit Judgment

LLC, Mississippi Investors VIII, LLC, Mississippi Investors X, LLC and Mississippi Investors XIV, LLC. Hall was aware of this judgment during all material time periods discussed herein.[58]

48. On November 15, 2012 Hall was in possession of an Opposition to Motion for Summary Judgment filed by Kennedy's Louisiana counsel, W. Christopher Beary. That opposition was filed on December 7, 2011 in the matter captioned Central Progressive Bank vs. David E. Fleisher, et al., 22nd Judicial District Court, Parish of St. Tammany, Civil Docket No. 2008-13320 (the "St. Tammany Matter").[59] The St. Tammany matter concerned the same parcel of land that provided security for HCB's interest to the debt owed by Kennedy. Section V of the memorandum in opposition to summary judgment filed in the St. Tammany Matter specifically addressed the credit given by a foreclosing creditor to a debtor for the fair market value of the property being sold. It further set forth the amounts of appraisals obtained on the property. Hall had this memorandum in November 2012 and was aware of the legal arguments and appraisals necessary to defeat HCB's Motion for Summary Judgment in the HCB Litigation.

49. On April 2, 2012 Hall emailed Kennedy asking if she (Kennedy) had a friend that would assist with the valuation questions as it related to the HCB Litigation.[60] That email pertained to the designation of expert witnesses to assist Kennedy on the valuation issue.

50. On October 24, 2012 Kennedy advised Hall, as it pertains to the Motion for Summary Judgment in the HCB Litigation, that the principal amounts claimed were wrong, that HCB did not account for pay downs, that the appraisal was wrong and that she was never notified that the foreclosure had taken place.[61]

---

[58] Exhibit 35 – September 2, 2011 email from Kennedy to Hall forwarding email correspondence with CPB
[59] Exhibit 36 – November 15, 2012 email from Hall to Kennedy forwarding Opposition to Motion for Summary Judgment filed in the St. Tammany Matter
[60] Exhibit 37 – April 2, 2012 email from Hall to Kennedy
[61] Exhibit 38 – October 24, 2012 email from Kennedy to Hall

13

51. Hall participated in a conference call with Kennedy and attorney W. Christopher Beary during which they discussed obtaining an appraisal of the Horizon Property to provide a defense in the HCB Litigation. Hall never obtained an appraisal. Kennedy was advised by Hall that an appraisal was obtained and submitted to the Court in Opposition to HCB's Motion for Summary Judgment.[62]

52. Hall was in possession of and/or had access to documents establishing that the fair market value of the Horizon Property was in excess of the amount it sold for at foreclosure. Hall failed to attach the documents to the Opposition Memorandum, failed to seek leave to and supplement the Opposition Memorandum with said documents and failed to obtain a fair market value appraisal that would be accepted by the Court as competent evidence.

53. Hall submitted an unsigned affidavit of Kennedy in opposition to HCB's Motion for Summary Judgment in the HCB Litigation. Judge Ozerden considered the affidavit but ruled that the affidavit itself failed to create a material issue of fact for trial.[63] Judge Ozerden stated: "In short, Kennedy has tendered an unexecuted Affidavit and no other documentary evidence in support of her argument that summary judgment in favor of HCB would be inappropriate."[64]

54. Hall fraudulently concealed, for a period of time, his inactions and omissions as detailed hereinabove.

55. Bryan Nelson and Hall owed Kennedy a duty of reasonable care in the handling of the HCB Litigation. Specifically, Bryan Nelson and Hall had a duty to (1) oppose the HCB Motion for Summary Judgment with documents and an appraisal(s) establishing the fair market value of

---

[62] Exhibit 39 – March 15, 2013 email from Kennedy to Hall
[63] Exhibit 32
[64] Exhibit 32

14

all property foreclosed on; (2) attach, file and submit the existing appraisals of the Horizon Property that were available to him; (3) Order an additional fair market value appraisal of the Horizon Property; (4) conduct reasonable discovery within the deadlines in the Court's scheduling order; (5) motion the Court to extend the discovery cut-off deadline if sufficient time did not exist to conduct discovery; (6) motion the Court to file a supplemental memorandum opposing the HCB Motion for Summary Judgment and (7) designate an expert witness to render an expert report and testify as to the fair market value of all property foreclosed on.

56.  Bryan Nelson and Hall owed Kennedy a duty to provide competent counsel to Kennedy. It is alleged the competent counsel was not provided. They further owed a duty of honesty, loyalty and the duty of full disclosure. Bryan Nelson and Hall breached these duties.

57.  Kennedy claims all damages which may be recoverable under the laws of Mississippi. In addition and without limitation, Kennedy claims any and all damages including 1) the judgment against her in HCB Litigation in the amount of $2,019,495.82; 2) all attorney's fees, costs and expenses incurred in the defense of collection efforts of said judgment in Mississippi, Louisiana, Texas and Florida; 3) All attorney's fees, costs and expenses paid to Bryan Nelson in connection with its representation of Kennedy in the HCB Litigation and 4) any and all other damages recoverable under the laws of the State of Mississippi for a breach of the duties owed to Kennedy.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Kennedy demands trial by jury in this action of all issues so triable.

**WHEREFORE**, Kennedy demands trial by jury and prays for Judgment in her favor, and against Jeffrey L. Hall and Bryan Nelson, PA, for all actual, compensatory, consequential and incidental damages in an amount that exceeds the jurisdictional limits of this Court. Kennedy prays for any other type of damages recoverable that were sustained by her in connection with the facts alleged in this Complaint and further for any general relief as required under the law, including interest on any judgment from the date of judicial demand until paid in full.

Respectfully submitted this 9th day of October, 2015.

JONES LAGARDE LLC

ROSS F. LAGARDE (Bar Roll 101400)
61025 Hwy 1091
Slidell, Louisiana 70458
Tel: 985-643-2413
Fax: 985-649-5830
ross@joneslagarde.com
Attorney for Lee F. Kennedy

Service Instructions:

Bryan Nelson P.A.
Through its Registered Agent for Service
Rick D. Norton
109 Fairfield Drive
Hattiesburg, MS 39402

Jeffrey L. Hall
140 Mayfair Road
Suite 700
Hattiesburg, MS 39402